UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN MIRANDA, </br>           Plaintiff, </br>    v. </br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, </br>           Defendant. </br> _____ | NO. EDCV 16-00018 KS </br></br> MEMORANDUM OPINION AND ORDER |

## INTRODUCTION

Plaintiff, Adrian Miranda ("Plaintiff"), filed a Complaint on January 5, 2016 seeking review of the denial of period of disability and disability insurance benefits ("DIB"). (ECF No. 1.) On June 10, 2016, the parties filed a Joint Stipulation ("Joint Stip.") in which Plaintiff seeks an order reversing the Commissioner's final decision and awarding immediate payment of benefits. (ECF No. 16, Joint Stip. 22-23.) The Commissioner requests that the Court uphold the ALJ's decision or, should the Court reverse the decision, remand to the agency for further administrative proceedings. (*Id.* at 22.) On January 29 and February 22, 2016, the parties consented, pursuant to 28

1

U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (ECF Nos. 11-12.) Having reviewed the parties' respective contentions, the Court has taken the matter under submission for decision without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his initial applications for DIB on November 19, 2007, with an alleged disability onset date of July 31, 2006 due to injuries sustained after falling four stories through a skylight while doing maintenance work. (Administrative Record ("AR") 159-168.) On March 4, 2009, Administrative Law Judge Phillip J. Simon, issued a decision in which he concluded that Plaintiff "has been under a disability as defined in the Social Security Act since July 31, 2006, the alleged onset date of disability." (AR 89.) On August 12, 2011, the Social Security Administration ("Agency") notified Plaintiff that the Agency had concluded that Plaintiff was "no longer disabled as of 08/2011" based on a determination that Plaintiff's condition had significantly improved since March 4, 2009. (AR 95, 113.) On August 19, 2011, Plaintiff sought reconsideration of the disability cessation decision (AR 99-100) and on March 14, 2012, Plaintiff testified at hearing before a Disability Hearing Officer. (AR 110-115.) On March 16, 2012, the hearing officer found Plaintiff to be "not disabled." (AR 120.)

On March 29, 2012, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 124.) Plaintiff appeared, without representation of counsel, before ALJ Jesse J. Pease on June 14, 2012. (AR 57-77.) Also appearing at the hearing was Vocational Expert ("VE") Troy L. Scott. (AR 72-77.) ALJ Pease issued an adverse decision denying Plaintiff's claim on July 10, 2012 based on medical improvement. (AR 20-41.) Plaintiff filed a timely request for review of ALJ Pease's

decision. (AR 18-19.) The Appeals Council denied review in a written notice dated July 30, 2013 (AR 13-15) and again on November 23, 2015 (AR 1-7). This timely request for judicial review followed.

## SUMMARY OF ADMINISTRATIVE DECISION

At the time of the hearing before ALJ Pease, Plaintiff was 35years old, which is defined under agency regulations as a "younger individual" (age 18-49), on the alleged onset date. (*Id*. at 22; *see also* 20 CFR § 404.1563, 416.963.)[1] Plaintiff's prior relevant work experience was as school custodian and heating and air conditioning technician. (*Id*. at 72-73.) Because the ALJ was tasked with determining whether Plaintiff continued to be disabled, the ALJ applied an eight step evaluation process under 20 C.FR 404.1594. (AR 23.)

As an initial matter, the ALJ identified March 4, 2009 as the "comparison point decision" or CPD, meaning the most recent favorable medical decision finding Plaintiff disabled. (AR 24.) The ALJ next determined that at the time of the CPD, Plaintiff had the following medically determinable impairments:

> A history of multiple fractures of the wrists bilaterally, status-post multiple surgeries; a history of a right forearm and elbow fracture, status-post multiple surgeries; hypertension; degenerative disc disease of the lumbosacral spine; a history of a sacral fracture, healed; history of pelvic fractures; a history of aortic root dissection; mitral valve disease; anxiety disorder; and a history of alcohol dependence, in remission.

---

[1] Plaintiff's date of birth is August 23, 1976. (AR 87.)

(AR 25.) Based on these impairments at the time of the CPD, the ALJ determined Plaintiff had the residual functional capacity ("RFC") to

> lift up to ten pounds occasionally and frequently; stand and walk for two hours of an eight-hour workday; sit for less than six hours per day; operation of arm controls is limited to occasionally with the left upper extremity and precluded with the right upper extremity; never climb ladders, ropes, and scaffolds or craw[l]; occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; never perform gross or fine manipulation with the right upper extremity; occasionally perform gross and fine manipulation with the left upper extremity; avoid work involving heights, dangerous moving machinery, or similar hazards; limited to work requiring no more than simple tasks and instructions; and not able to work on a regular and continuous basis.

(*Id.*)

The ALJ found that Plaintiff had not engaged in substantial gainful activity through August 1, 2011, the date Plaintiff's disability ended. (AR 25.) The ALJ next found that Plaintiff did not develop any additional impairments after the CPD through August 1, 2011 and, therefore, had the same impairments that he had at the time of the CPD. (*Id.*) The ALJ further noted that the medical records indicate that Plaintiff "continued routine, conservative treatment for his multiple impairments from the CPD through August 1, 2011," but his physical symptoms improved and "his mental impairments no longer caused significant limitations." (*Id.*)

The ALJ determined that since August 1, 2011, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526 and 404.1526). (*Id.*) The ALJ also found that medical improvement occurred and specifically, as of August 1, 2011 "there had been a decrease in medical severity of [Plaintiff's] symptoms." (*Id.*) The ALJ concluded that "the medical evidence records . . . support improvement in both the [Plaintiff's] physical and mental impairments." (*Id.*)

After considering the entire record, including Plaintiff's testimony and testimony from the VE, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of "light work" as defined in 20 C.F.R. §§ 404.1567(b). (AR 26.) Specifically, Plaintiff could

> Lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; the right upper extremity is limited to occasional push or pull and five pounds maximum; [Plaintiff] is limited to occasional fine manipulation and frequent gross manipulation with the right dominant hand; [Plaintiff] is limited to frequent gross and fine manipulation with the left hand; . . . cannot perform forceful gripping or torquing with either hand; . . . can stand and/or walk for four hours out of an eight-hour workday; . . . sit for six hours out of an eight-hour workday; . . . perform postural activities on an occasional basis, except no crawling or climbing of ladders, ropes, and scaffolds; and . . . must avoid hazardous machinery and unprotected heights.

(AR 26.)  Based on this RFC and the testimony of the VE, the ALJ concluded that Plaintiff could not perform his past relevant work as a school custodian, DOT[2] 382.664-010, a medium, semi-skilled occupation, or as a heating and air-conditioning technician, DOT 637.261-014, a medium, skilled occupation.  (AR 35.)

After considering Plaintiff's age, education,[3] work experience and RFC, the ALJ determined that Plaintiff can perform other jobs "that exist in significant numbers in the national economy," including the work of tollbooth worker, (DOT 211.462-038); ticket taker (DOT 344.667-010) and information clerk (DOT 237.367-046).  (AR 36.)  The ALJ consequently concluded that Plaintiff's disability ended as of August 1, 2011. (AR 37.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).  "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

---

[2] *Dictionary of Occupational Titles* (U.S. Department of Labor, 1991).
[3] Plaintiff has a high school education and is literate in English (AR 35.)

6

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISPUTED ISSUES

Plaintiff raises two disputed issues, arguing that the Commissioner's decision should be reversed and immediate benefits should be awarded because:

(1) in making the RFC assessment, the ALJ erred in his evaluation of the opinions of the treating, examining, and reviewing physicians; and
(2) The ALJ erred in his evaluation of Plaintiff's credibility and subjective complaints of pain.

(Joint Stip. at 4.)

For the reasons discussed below, the Court finds no legal error in the ALJ's decision and concludes the Commissioner's decision must be affirmed.

## DISCUSSION

**I. The ALJ's Evaluation of the Medical Opinions**

Plaintiff contends that the ALJ erred in rejecting the opinions and assessments of Plaintiff's treating physician, Dr. Paveloff in favor of the opinions of the non-examining State-agency physician and the consultative evaluator. (Joint Stip. at 7-8.) Defendant responds that the ALJ's evaluation of the medical opinions is supported by substantial evidence in the medical record and the ALJ did not err in giving limited weight to the opinion of treating physician Daniel Paveloff because his opinion was inconsistent with the overall record. (*Id*. at 8.)

**A. Applicable Law**

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them"). An ALJ errs when he discounts a treating or examining physician's medical opinion, or a portion thereof, "while doing

8

nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *See Garrison*, 759 F.3d at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

The opinion of a treating source is generally entitled to greater weight than the opinion of doctors who do not treat the claimant because treating sources are "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See Garrison*, 759 F.3d at 1012; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, if a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it is entitled to controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). If, on the other hand, the Commissioner determines that a treating physician's opinion does not meet this test for controlling weight, the treating physician's opinion is still entitled to deference and may be rejected only if the ALJ articulates "clear and convincing" reasons supported by substantial evidence for doing so. *Id.* at 1160-61; *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Nevertheless, an ALJ does not commit legal error *per se* by according greater weight to the opinion of a nonexamining State agency physician than to the contradictory opinion of a treating physician. *See, e.g.*, *Morgan v. Comm'r of. Soc. Sec. Admin.*, 169 F.3d 595, 600-03 (9th Cir. 1999). Instead, an ALJ may reject the contradicted opinion of a treating physician if the ALJ articulates "specific and legitimate" reasons for doing so and those reasons are supported by substantial

evidence in the record. *Garrison*, 759 F.3d at 1012; *Hill v. Astrue*, 698 F.3d 1153, 1159-60 (9th Cir. 2012).

## B. The ALJ Did Not Err in Evaluating the Physician Opinions

### i. Treating Physician Dr. Paveloff

Dr. Daniel Paveloff treated Plaintiff in connection with his workers' compensation claim resulting from work-related injuries Plaintiff suffered in a four-story fall through a skylight on July 31, 2006. (AR 272.) On March 4, 2009, Plaintiff was found to be under a disability since July 31, 2006. (AR 78-89.) In determining whether Plaintiff continued to be disabled after August 1, 2011, ALJ Pease gave Dr. Paveloff's opinion little weight, concluding that Dr. Paveloff's opinion was "not supported by objective evidence and it is inconsistent with the record as a whole." (AR 32.) The ALJ provided clear and convincing reasons for not giving controlling weight to this treating physician's opinions.

First, the ALJ rejected Dr. Paveloff's opinion that Plaintiff was unable to work. (*Id.*) Although a treating physician's opinion is generally entitled to deference, the question of whether Plaintiff can work is one that is reserved exclusively to the Commissioner. 20 C.R.F. § 404.1527(e)(1); *and see McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) ("The law reserves the disability determination to the Commissioner.") The ALJ also explained that "Dr. Paveloff primarily summarized the claimant's subjective complaints, diagnoses and treatment, but he did not provide objective clinical or diagnostic finding to support the functional assessment." (AR 32.) The ALJ's conclusions are well supported by the record.

Dr. Paveloff provided a single narrative report in which he summarized the history of Plaintiff's injuries and treatment from the 2006 work accident to 2012. (AR 399-406.) The remainder of Dr. Paveloff's report recites Plaintiff's subjective symptoms, but does not include any clinical observations, evidence of test results, or specific diagnoses. (*See, e.g*., AR 403.) The ALJ also found Dr. Paveloff's opinions were "inconsistent with the record as a whole." (AR 32.)

This conclusion too is supported by the record where, for example, Dr. Paveloff describes Plaintiff as unable "to complete an entire eight-hour workday with sitting, standing or a combination of each on a sustained basis" (AR 404), while other evidence in the record indicates that Plaintiff regularly attends church (AR 197), daily goes outside, accompanies his son to and from school, shops for groceries and clothes (with help lifting things from his wife and/or son) (AR 204), and he goes to eat or "hang out" 2-3 times per week (AR 205).[4] In addition, the ALJ found Dr. Paveloff's opinion inconsistent with opinions rendered by consultative examiner Dr. Sophon.

### ii. Consultative Examiner Dr. Sophon

At the Agency's request, Dr. Sophon conducted a "complete orthopedic evaluation" of Plaintiff and provided a report dated July 22, 2011. (AR 332-39.) Dr. Sophon did not review any medical records (AR 332), but based his findings on a "formal physical examination procedures and observation of the [Plaintiff's]

---

[4] The ALJ also explained that he discounted Dr. Paveloff's opinions because the physician was paid for his services in connection with Plaintiff's efforts to secure worker's compensation benefits. (AR 32.) The Court does not find this reason for discounting Dr. Paveloff's opinions clear or convincing. As Plaintiff points out, the State agency's medical consultant and consultative evaluator were also paid for their services and yet the ALJ did not find the mere fact of payment to be a reason to discount their opinions. (*See* Joint Stip. 5.) Indeed, as the Ninth Circuit has emphasized, "The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at 832. Nonetheless, for the reasons discussed above, the Court finds this error harmless because the remaining reasons given by the ALJ for discounting Dr. Paveloff's opinions are supported by the record and without legal error.

11

movements and actions during the taking of the history and physical examination." (AR 333.) The ALJ gave Dr. Sophon's opinion "significant weight," explaining that Dr. Sophon "personally observed and examined the claimant." (AR 33. )

Dr. Sophon noted that although Plaintiff brought a cane, he "demonstrated a normal gait without using the cane" and Plaintiff could perform "a 50 percent squatting maneuver." (AR 334.) Dr. Sophon diagnosed an open fracture of the right forearm and right wrist, status post open reduction and internal fixation, and closed fracture of the lift wrist, status post open reduction and internal fixation. (AR 336.) Based on his examination, Dr. Sophon concluded that Plaintiff "is capable of lifting and carrying 20 pounds occasionally, 10 pounds frequently" and had no restriction in sitting, standing, or walking. (AR 337.) He found Plaintiff restricted to only occasional pushing or pulling with his right hand, no postural limitation, and no manipulative limitation. (*Id.*) In contrast to Dr. Paveloff's opinion that "straight leg raise testing elicited increased low back pain, with reduced range of motion in all planes tested of both the thoracic and lumbar spine," (AR 404), Dr. Sophon's straight leg raising examination showed "[n]egative both sitting and supine bilaterally." (AR 334.) Further, Dr. Sophon's examination of Plaintiff's thoracic and lumbar spine revealed, "there is a full range of motion of the lumbar spine." (AR 334.) Notwithstanding these findings, the ALJ nonetheless concluded that "the more restrictive residual function capacity assessed by the State agency physical medical consultant on initial review is more consistent with the evidence as a whole." (*Id.*)

### iii. Agency Consultant Dr. G. Spellman, M.D. (non-examining)

Lastly, the ALJ gave "significant, but not great, weight" to State agency physical medical consultant on reconsideration, Dr. Haaland, who opined that Plaintiff

>can lift and/or carry twenty pounds occasionally and ten pounds frequently; . . . can stand and/or walk six hours in an eight hour workday; . . . can sit for six hours in an eight-hour workday; . . . can never climb ladders, ropes, or scaffolds, but he can perform all other postural activities on an occasional basis; . . . is limited to frequent gross manipulation, but has no other manipulative limitations, . . . has no visual, communicative, or environmental limitations.

(AR 32 (citing AR 374-379).) While the ALJ found Dr. Haaland's opinions "not inconsistent" with the RFC in the decision, the ALJ found "the more restrictive finding of the State agency physical medical consultant on initial review," Dr. Spellman, to be "more consistent with the evidence as a whole." (AR 33.)

Plaintiff argues that the ALJ's reliance on Dr. Spellman was misplaced and that the ALJ "cherry picked" from Dr. Spellman's finding. (Joint Stip. at 7.) Specifically, Plaintiff contends that the ALJ did not include in the RFC determination Dr. Spellman's finding that Plaintiff as limited in reaching in all directions with his right upper extremity and limited in feeling (skin receptors with his right upper extremity" and did not explain why he rejected these findings. (*Id.*) Defendant responds that Dr. Spellman's postural limitations are consistent with the ALJ's finding. (Joint Stip. at 10.) The Court agrees. Dr. Spellman's finding that Plaintiff's ability to push and/or pull is "limited in upper extremities" (AR 349) is reflected in the RFC, which provides that "the right upper extremity is limited to occasional push or pull." (AR 26.) The RFC also provides that Plaintiff "cannot perform forceful gripping or torqueing with either hand." (*Id.*)

13

Accordingly, after review of the record as a whole, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting the opinion of Dr. Paveloff and affording greater weight to the opinions of Dr. Sophon and Dr. Spellman. Even if reasonable minds might disagree as to the weight the ALJ gave to Dr. Paveloff's opinions, given the inconsistencies in the record evidence between Dr. Paveloff's findings and those of Drs. Sophon and Spellman, reasonable inferences support the ALJ's determination and the Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina,* 674 F.3d at 1110.

## II. Plaintiff's Credibility and Subjective Pain Testimony

Plaintiff also argues that reversal is warranted because the ALJ, in finding that Plaintiff was "partially credible," did not properly assess Plaintiff's credibility as to the severity of his subjective symptoms. (Joint Stip. at 14-17.) Defendant responds that, based on the medical evidence, the ALJ reasonably found Plaintiff's allegations of "extreme and disabling symptoms" not credible and the ALJ provided "multiple valid reasons" in support of his adverse credibility determination. (*Id.* at 17.) For the reasons discussed below, the Court finds that the ALJ did not err in discounting Plaintiff's credibility.

### A. Applicable Law

It is the ALJ's obligation to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (internal citation omitted). If the ALJ finds no evidence of malingering, and the claimant has provided objective medical

14

evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F. 3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). The Ninth Circuit, in *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015), recently re-emphasized the "clear and convincing" requirement for finding a claimant's testimony not credible.[5]

Further, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester,* 81 F.3d at 834. A credibility finding must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (internal citation omitted). The governing statute and agency regulations do not permit an award of disability benefits based solely on a claimant's own statements about her symptoms. Indeed, Congress expressly provided that

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged[.]

---

[5] Defendant concedes in a footnote that the Ninth Circuit has required clear and convincing reasons for rejecting a claimant's testimony, but the agency maintains "this standard is inconsistent with the deferential substantial evidence standard set forth in 42. U.S.C. § 405(g)" and with the agency's regulations. (Joint Stip. at 11, n.2) The Court does not reach that issue here.

15

42 U.S.C. § 423(a)(5)(A); *and see* 20 C.R.R. §§ 404.1529(a), 416.929(a).

## B. The ALJ Provided Sufficiently Specific, Clear, and Convincing Reasons, Supported by the Record for Finding Plaintiff Not Fully Credible

Here, the ALJ engaged in the appropriate two-step process for evaluating Plaintiff's symptoms. First, he determined that there were underlying medically determinable physical impairments that could reasonably be expected to produce Plaintiff's pain and/or symptoms and Plaintiff "continued to have the same impairments that he had at the time of CPD." (AR 25.) The ALJ noted that "with regard to [Plaintiff's] physical impairments, there remained evidence of significant limitations in his ability to perform basic work-related activities, but not to the same extent he once was limited." (*Id.* at 26.) Next, the ALJ evaluated the "intensity, persistence, and limiting effects of Plaintiff's symptoms "to determine the extent to which they limited the [Plaintiff's] ability to do basic work activities." (*Id.* at 27.)

Plaintiff testified that he has difficulty sitting, standing or walking for prolonged periods. (AR 63.) He also stated he can only sit for about 30 minutes and cannot sit for four hours per day. (AR 64.) He takes strong prescription narcotics for chronic pain that makes him sleepy and nauseous. (AR 65.) He also testified he has limited movement in his wrist and has difficulty grasping things; his left hand is "better" but he had arthritis in it. (AR 67.) At the hearing, he testified "I'm, not an invalid but I can – I could still do some things but it's just it takes me quite a while to do things. . . My back, it bothers me if, like walking or standing so basically, you know, I have to take a lot of breaks . . . I can't carry anything heavy, obviously." (AR 68.) He stated

he has four to five bad days per week, about 20 in a month. (AR 65.) The ALJ found Plaintiff "partially credible because he has some limitations, but not to the extent he has alleged." (AR 27.)

The ALJ based this determination on several factors reflected in the record. First, he found that the office visit notes reflected "numerous occasions on which the "Plaintiff did not specify any particular complaint" and the ALJ believed this to be inconsistent with Plaintiff's claims of ongoing, disabling symptoms. (AR 27.) Specifically, the ALJ pointed to Plaintiff's complaint of sleeping a lot and found no evidence in the medical record of this complaint "until his most recent treatment, just prior to the hearing" and the ALJ noted that "numerous records prior to that . . . indicate he has no problems with sleep." (*Id*.) Second, the ALJ considered the third party function reports provided by Plaintiff's wife and mother, but concluded that their statements essentially repeat Plaintiff's subjective complaints about his condition, including references to his need for naps. (*See, e.g*., AR 194, 219.) The ALJ noted that "the repetition of [Plaintiff's] complaints through his mother and wife does not make them any more credible." (AR 28.) The ALJ found that the opinions of Plaintiff's mother and wife were not unbiased because of their financial interest in seeing Plaintiff receive benefits. (*Id*.) Moreover, the ALJ emphasized that the statements in the third party function reports "are not supported by the clinical or diagnostic medical evidence." (*Id*.)

Third, the ALJ determined that Plaintiff had not "generally received the type of medical treatment one would expect for a totally disabled individuals." (AR 28.) In particular, the ALJ pointed to a "significant gap" in Plaintiff's treatment history between July 1, 2011 and May 21, 2012 and he found that the treatment prior to that period was "generally routine and conservative in nature." (*Id*.) Overall, the ALJ

17

found the treatment history was inconsistent with the alleged severity of Plaintiff's symptoms. (*Id.*)

Lastly, the ALJ supported his conclusion that Plaintiff was not fully credible on the additional grounds that Plaintiff had "engaged in a somewhat normal level of daily activity and interaction, including driving his son to school, doing light household chores, walking his dog, cooking and running errands. (*Id.*) While a claimant is not required "to vegetate in a dark room" in order to be found disabled, "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1112. Moreover, "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113 (internal citations omitted). Here, the record reflects that Plaintiff engages in a variety of daily activities that do not support his claim of total disability, including helping with household chores, accompanying his son to and from school, walking his dog, attending church regularly, grocery shopping, and going out with friends. (AR 197, 204-05.)

The Court does not find the gap in Plaintiff's treatment history, without some indication as to why Plaintiff did not seek treatment during that period, to be an adequate basis on its own for discrediting Plaintiff's credibility. However, to the extent the ALJ supported his conclusion that Plaintiff was not fully credible on other grounds, including that Plaintiff's allegations of the severity of his medical impairments and symptoms are undermined by his activities of daily living and generally conservative medical treatment, the Court finds that any error in relying on

the treatment gap is harmless because the adverse credibility determination is nonetheless well supported by the record evidence.

Accordingly, because the ALJ's adverse credibility determination was supported by specific, clear and convincing reasons, the Court upholds it.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGEMENT BE ENTERED ACCORDINGLY.

DATED: January 10, 2017

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE